## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA,

## JANUARY TERM, 1870.

<hr/>

### JAMES CONEHAN

### *vs.*

### MICHAEL CROSBY.

Defendant being a sub-contractor under M. O. Walker for carrying the mail upon route No. 13,593, the plaintiff agreed with him, to carry the same from August 9, 1867, to April 9, 1868, with the privilege of carrying the same till July, 1870, so as to save defendant and said Walker harmless, in respect of all requirements of the Post Office Department, and in consideration thereof, the defendant agreed to pay him at the rate of seven hundred and eighty dollars a year, "that is, five hundred and twenty dollars for the whole time above stated, payable quarterly, as the same is paid by the Post Office Department, to M. O. Walker, and by him paid to said Crosby; and said Crosby agrees, in case the same is not paid within thirty days, to draw an order on said Walker for the same, or the amount which shall be unpaid. The agreement to pay is subject to deductions for all fines and deductions by the Post Office Department."

*Held :* That defendant's liability to plaintiff was not limited to faith-

fully accounting for all moneys received from Walker or the United States, and drawing said order as above provided; and that, as his engagement to carry the mails was not unqualified, but so as to save the defendant and Walker harmless in respect of the requirements of the Post Office Department; if the defendant had suffered by reason of any fines or deductions imposed by the Post Office Department for loss of trips, that was matter of defence for defendant to show.

Defendant set up a livery bill as a counter-claim, the contracting which plaintiff admitted, averring ignorance of its amount, and that he had paid it, and there was evidence on both sides as to whether there was anything due defendant therefor. The court below refused to charge the jury that defendant was entitled to all the counter claim that they find from the evidence to be proven. *Held :* that such refusal was right.

This action was brought in the district court for Rice county to recover the sum of $395, alleged to be due the plaintiff from defendant, as an unpaid balance of $552.50, the contract price for carrying the mails on route number 13,593, from August 9th, 1867, to April 9th, 1868, at the rate of $780 per year. M. O. Walker was the contractor with the P. O. Department, and the defendant a sub-contractor at the rate of $790 per year. One of the principal questions in the case arises upon the construction of the contract, the material portions of which are as follows: "The said James Conehan hereby agrees to carry the mail on route No. 13593, from Red Wing to Faribault and back, twice a week each way, from the 9th day of August, 1867, till the 9th day of April, 1868, with the privilege of carrying the same until July 1st, 1870, in accordance with, and subject to the regulations and requirements of the Post Office Department, so as to save the said Crosby and Martin O. Walker, the principal contractors, harmless therefrom in all respects, and in consideration of the faithful performance of the same, the said Crosby agrees to pay the said Conehan at

Conehan v. Crosby.

the rate of seven hundred and eighty dollars a year—that is five hundred and twenty dollars for the whole time above stated, payable quarterly, as the same is paid by the Post Office Department, to Martin O. Walker, and by him paid to said Crosby, and said Crosby agrees, in case the same is not paid within thirty days, to draw an order on said Walker for the same, or the amount which shall be unpaid. The agreement to pay is subject to deductions for all fines or deductions by the Post Office Department, any increase or reduction of the same, either way, to be in like proportion as to pay."

The plaintiff claimed that the contract was absolute, requiring the defendant to pay the stipulated price, if the services were performed, quarterly; while the defendant insisted that his liability is limited by the contract, to a faithful accounting for all moneys received by him from Walker or the Department.

The contract between Walker and the defendant, in regard to time of payment, was precisely like that between plaintiff and defendant, and was subject to like deductions, &c.

In March, 1868, the defendant made another written contract with the plaintiff, the material portions of which are as follows :

"In consideration of the sum of three hundred and ninety dollars, to me paid by James Conehan, of Rice County, Minnesota, by carrying the mail on route No. 13593, from Red Wing to Faribault and back, for the period of six months, from October 1st, 1867, to April 1st, 1868, pursuant to a contract entered into between myself and said Conehan, under date of September 1st, 1867, and as security for the payment of the amount due said Conehan from me under said agreement, I hereby sell, assign, transfer and set over unto the said Conehan, all my right, title and interest in, to

and under a certain contract for carrying said mail entered into between me and Martin O. Walker, and dated at Hastings, Minnesota, June 21st, 1866, and do also sell, assign and transfer to said Conehan, all moneys due or to become due from said Walker to me, on or by virtue of said contract,   *   *   *   it being understood and agreed that this agreement shall not release me from any obligation on account of my said contract with said Conehan, but is simply collateral security therefor. And all such sums as said Conehan shall collect of said Walker on his said contract so assigned, shall be accounted for and applied by said Conehan in payment of any sums which are or shall become due on or by reason of my said contract with said Conehan, and the balance, if any, after paying said Conehan in full, shall be paid by said Conehan to me."

There was evidence that the plaintiff lost a number of trips while carrying the mails, one witness stating the number at five or six, and another at eleven; but it did not appear that the Department had imposed any fines, or made any deductions on account of lost trips.

A counter claim was set up in the answer for livery hire, and the plaintiff in his reply admitted that he contracted a livery bill, averred ignorance as to its amount, and alleged that he had paid it; there was evidence on both sides as to whether any thing was due defendant therefor. At the close of the testimony, and after an oral charge by the court, the defendant requested the court to charge the jury as follows:

"That by the written contract between plaintiff and defendant for carrying the mail, dated Sept. 12th, 1867, the defendant is not responsible, if he has faithfully paid over all that he has received from Walker or the United States Government, and did within thirty days draw an order on

said Walker for the amount unpaid as therein provided. That under the written contract between the parties the burden of proof is on the plaintiff to show a failure to perform his contract by the defendant, and if he has failed to show that the defendant has not faithfully and in accordance with said agreement, paid over all moneys received by him of Walker or the United States Government, or has failed to draw an order on Walker as the said contract provided, then he cannot recover."

"That if the plaintiff in this case has agreed to carry the mail twice a week for a fixed period of time unqualifiedly, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party; unforeseen difficulties, however great, will not excuse him."

"That the defendant is entitled in any event, if he should be liable at all, to a deduction for a proportional sum for each trip lost, and to all the counter-claim for livery bill, &c., that they find from the evidence to be proved, with interest from the time the same was furnished."

These requests were severally refused by the court, and exceptions were duly taken by defendant. The jury found a verdict for plaintiff for $401. Judgment was entered, and the defendant appeals therefrom to this court.

G. E. Cole for Appellant.

I.—The written contract of the appellant is qualified by the following language: "Payable quarterly, *as the same is paid by the Post Office Department to Martin O. Walker, and by him paid to said Crosby; and said Crosby agrees, in case the same is not paid within thirty days, to draw an order on said Walker for the same, or the amount which shall be unpaid.*"

---

Conehan v. Crosby.

---

Under this contract the plaintiff, it is conceived, had three courses open to him:

1st. If the defendant had refused on demand to give the order, a complaint upon the special agreement to draw the order alleging demand and refusal.

2d. If the defendant had drawn the order, but it had not been honored by Walker upon proper presentation and notice to the defendant, an action against him upon the order as drawn would have lain.

3d. By alleging and proving that the money had been received by the defendant from Walker, and he had neglected and refused to pay it over to the plaintiff.

It is a received rule of construction that in the exposition of a contract effect should be given to every part, but the language in italics must be wholly disregarded, or it must be held to limit the liability of the defendant to faithfully accounting for all moneys received. *Hunt vs. City of Utica*, 18 *N. Y.*, 442.

II.—The assignment or second contract does not extend or enlarge the construction of the first contract. It is simply an assignment of the original contract between Walker and Crosby to the plaintiff, referring to and adopting the contract between plaintiff and defendant, and reserving whatever rights, if any, existed under that contract in the plaintiff. Whether the parties when the assignment was executed erred, or did not, even in their belief of the liabilities created by the original contract, cannot effect its construction as matter of law. The defendant in executing the assignment assumed no other or greater liabilities than those already existing, whatever they were.

III.—In a suit upon *the special contract* the plaintiff must show complete performance on his part, unless performance is rendered wholly *impossible* by the act of God, the law or

the other party. Unforeseen difficulties, however great, will not excuse him. *Dermot vs. Jones,* 2 *Wallace,* 1; *Cowley vs. Davidson,* 13 *Minn.,* 100; *Mason & Craig vs. Haywood,* 3 *Minn.,* 182.

IV.—But if it be admitted that the plaintiff is entitled to recover as upon a "*quantum meruit*" for the actual number of trips made, he certainly can only recover for those actually made, at the price fixed in the special contract. It seems clear that our last request should have been given.

He is to recover what his services were actually worth as measured by the contract price fixed by the parties in their special agreement.

BATCHELDER & BUCKHAM for Respondent.

I.—The construction given to the contract by the court below was correct, that is—

That there was an absolute agreement by the defendant that he would pay for the services *quarterly.*

That the words "as the same is paid, &c.," do not amount to a proviso, and are no limitation of the term "quarterly," but are merely put in to show the usual custom of the P. O. Department as to time of making payment for service in carrying mails.

That the agreement to draw the order is an independent and separate agreement from that to pay quarterly. Under any other construction no meaning or effect can be given to the term "quarterly."

II.—The assignment or second contract admits an absolute agreement and indebtedness, and further admits that the work has been done and accepted by the defendant.

III.—The first and second requested instructions could

Conehan v. Crosby.

not be given because they were not good law—were abstract propositions and not applicable—and there had already been given a sufficient oral charge upon the law of the case.

IV.—The third requested instruction could not be given because the counter-claim for livery was all proved by defendant, and admitted by plaintiff, but the plaintiff proved that it had been paid.

*By the Court.*—RIPLEY, CH. J.—This action is brought to recover the sum of $395 as the unpaid balance of $552.50, alleged to be due from defendant to plaintiff, for carrying the mails between Faribault and Red Wing, from August 9th, 1867, to 25th April, 1868, twice a week each way, upon mail route No. 13,593, under a contract with defendant at the stipulated compensation of 780 dollars by the year.

At the trial it appeared that one M. O. Walker had contracted with the P. O. Department to carry the mail on said route from July 1st, 1866, to July 1st, 1870, but at what rate of compensation did not appear; that on the 28th June, 1866, the defendant agreed with him to perform said service in accordance with, and subject to the regulations, and requirements of the Department, so as to save said Walker harmless therefrom in all respects, said Walker agreeing to pay him therefor at the rate of $790 per year, payable quarterly, "*as the same is paid by the Post Office Department,*" subject to deductions for all fines or deductions by the Department; any increase or reduction of the service either way to be in like proportion as to pay. The words above quoted do not limit Walker's liability to a mere faithful accounting to Crosby for moneys paid to him by the Department: such a construction requires the giving to the word "*as,*" the sense of "provided" or "if and when" which

Conchan v. Crosby.

it has not naturally. If indeed, as for aught that appears may have been the case, Walker was to receive less than $790 per annum from the United States, such a construction would be wholly inconsistent with, and repugnant to his agreement to pay Crosby that sum.

But no reason appears in the contract for not taking these words in their natural sense, which is, that Walker agrees to pay Crosby at the rate of seven hundred and ninety dollars a year, as the Department pays him, namely, quarterly, during the term.

Afterwards the plaintiff agreed with defendant to carry said mails as aforesaid from August 9th, 1867, to April 9th, 1868, (8 months,) with the privilege of carrying the same till July, 1870, so as to save said Crosby and M. O. Walker harmless in respect of all requirements of the Department as aforesaid; and in consideration thereof, said Crosby agreed to pay him "at the rate of 780 dollars a year, that is, 520 dollars for the whole time above stated, payable quarterly, as the same is paid by the Post Office Department to Martin O. Walker, and by him paid to said Crosby, and said Crosby agrees, in case the same is not paid within thirty days, to draw an order on said Walker for the same, or the amount which shall be unpaid."

The agreement to pay is made subject to the like deductions, &c., on the part of the Department as is expressed in the contract with Walker. The defendant contends that the provisions quoted limit the defendant's liability to faithfully accounting for all moneys received, but we see no more reason to giving them this effect here, than in the first contract. Their natural meaning is, that as the Department pays Walker, and Walker pays Crosby for the service quarterly, from and after the first of July, 1866, so Crosby will

pay Conehan on the same regular quarter days, viz : Oct. 1st, 1867, and quarterly thereafter.

That the parties meant this, may also be inferred from the contract of March 30th, 1868, by which "*in considera-tion of the sum of* $390 *to me paid by James Conehan, by carrying the mail on route No.* 13593, *from Red Wing to Faribault and back, for the period of six months from Oct. 1st, 1867 to April 1st, 1868, pursuant to said contract,*" and to secure to said Conehan the payment of said sum, the defendant assigned to him his said contract with Walker.

The language quoted implies that Conehan had been paid up to said first regular quarter day occurring after his agree-ment with Crosby, and the statement made on March 30th, 1868, that Crosby owed him up to the regular quarter day then next to occur, shows, that the money was considered as falling due on those days.

It is no objection to this construction that if Conehan threw up the contract on the 9th of April, 1867, he would have to wait till the 1st of July for his pay from April 1st to April 9th, for the parties contemplated the probability of his continuing the service for the whole term, and if he did not, the inconvenience of waiting for nine days pay is over-balanced by the convenience of receiving pay from Aug. 9th to Oct. 1st, 1867, so early as on the latter day.

Moreover this assignment is wholly inconsistent with the defendant's theory. It admits that Crosby owes Conehan $590 for carrying the mail, and it is given to secure its pay-ment. It assigns the contract with Walker, and all moneys due or to become due from Walker to Crosby, but with the express understanding and agreement that it is not to release Crosby from any obligation on account of his contract with plaintiff, but is simply collateral security therefor, and all

moneys collected of Walker by Conehan, are to be applied in payment of any sums due or to become due from Crosby to Conehan by reason of their contract, and the balance, if any, after paying Conehan in full, is to be paid by Conehan to Crosby.

The defendant could not have used language better calculated to show, that he, at least, did not suppose that his liability to Conehan was in any way dependent upon the P. O. Department paying Walker, and Walker's paying him. The defendant's argument implies that this language arises out of the parties' erroneous belief as to the extent of the liabilities in law imposed upon defendant, by his contract with Conehan, and says very truly that the erroneous belief in that respect of the parties at the time the assignment was executed, cannot affect its construction as matter of law; but there is nothing to show that the parties did not so understand their contract from the beginning; and as the defendant best knows what he meant by it, he certainly ought not to complain if the court shall understand it in the same way as he has declared under his hand and seal that he did.

It is also in favor of plaintiff's construction of the contract, that Conehan is not to be paid as much as Crosby, but that on the whole service till July 1st, 1870, if done by Conehan, Crosby would make a small profit, as he would, to that extent, be more likely to bind himself to pay absolutely, than if he was to pay over all he received.

The right to draw on Walker if his money was not paid within thirty days after it became due, is plainly designed to give Conehan the advantage of Walker's responsibility in addition to Crosby's, and is wholly independent of Crosby's agreement to pay.

At the trial the defendant requested the court to instruct

the jury: 1st. That by the written contract between plaintiff and defendant for carrying the mail, dated Sept. 12th 1867, the defendant is not responsible if he has faithfully paid over all that he has received from Walker, or the United States Government, and did within thirty days draw an order on Walker for the amount unpaid, as therein provided; that under the written contract between the parties the burden of proof is on the plaintiff to show a failure to perform his contract by the defendant, and if he has failed to show that the defendant has not faithfully, and in accordance with his agreement, paid over all moneys received by him of Walker or the United States Government, or has failed to draw an order on Walker as the said contract provided, then he cannot recover, which the court refused to charge, and the defendant duly excepted.

Defendant also requested the Court to instruct the jury:

That if the plaintiff in this case has agreed to carry the mail twice a week, for a fixed period of time, unqualifiedly, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party; unforseen difficulties, however great, will not excuse him; which was refused, and defendant excepted:

That defendant is entitled, in any event, to a deduction for a proportional sum, for each trip lost, and to all the counter claim for livery bill, &c., that they find from the evidence to be proved, with interest from the time the same was furnished—which the Court refused, and the defendant duly excepted.

From what has been said, it is evident that there was no error in the refusal to give the first instruction asked.

Plaintiff's contract bound him to carry the mail twice a week, not unqualifiedly, but in accordance with, and subject to the regulations and requirements of the Post Office De-

Conehan v. Crosby.

partment, so as to save the said Crosby and Walker harmless therefrom in all respects. The second instruction had, therefore, no application to the case, and being a mere abstraction, the court was not bound to give it. And if he had agreed as specified in the instruction, a partial failure would certainly not be a total bar in this action, the defendant having admitted under seal that there was $590 due him, and for this reason also, the instruction might properly be refused.

The third instruction was also properly refused. It did not appear that the defendant had suffered by reason of any fines or deductions imposed by the Department for loss of trips, and it was only in that event, and to that extent, that plaintiff's pay was to be reduced on account of such lost trips.

If plaintiff had not so performed the service as to save defendant and Walker harmless, that was matter of defence, for defendant to show, and he has not done so. On the contrary, the assignment is a waiver of any claim for lost trips, and as the instruction was asked for as a whole, it might be so refused. It is to be presumed too, that on the counter claim separately considered, as in all other issues, the oral charge of the court was full and correct.

And besides, an instruction to the jury to allow defendant all the counter claim that they find to be proven, was abstractly incorrect, and might have a tendency to mislead them. Plaintiff admitted that he contracted a livery bill set up as a counter claim, averring ignorance as to its amount; and also alleged that he had paid it, and there was evidence on both sides as to whether there was anything due defendant therefor or not.

The instruction asked implies that plaintiff had paid nothing upon it.

The judgment of the court below is affirmed.